UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TONI IVY-COVINGTON,

        Plaintiff,

v.                                                        Case No. 19-CV-213

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

**1. Introduction**

Plaintiff Toni Ivy-Covington alleges that she has been disabled since March 1, 2005. (Tr. 35.) In July 2015 she applied for supplemental security income benefits. (Tr. 251-59.) After her application was denied initially (Tr. 130-42) and upon reconsideration (Tr. 112-28), a hearing was held before an administrative law judge (ALJ) on September 12, 2017 (Tr. 50-65). On December 6, 2017, the ALJ issued a written decision concluding Ivy-Covington was not disabled. (Tr. 35-45.) The Appeals Council denied Ivy-Covington's request for review on February 1, 2019. (Tr. 1-4.)

This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Ivy-Covington "has not engaged in substantial gainful activity since May 20, 2015, the application date[.]" (Tr. 37.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Ivy-Covington has the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the knees, obesity, a depressive mood disorder, and a personality disorder[.]" (Tr. 37.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically

equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Ivy-Covington "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 38.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Ivy-Covington has the RFC

> to perform light work as defined in 20 C.F.R. 416.967(b) except she can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; can frequently stoop, kneel, crouch, crawl, and engage in activities requiring balance; is limited to the performance of simple, routine, and repetitive tasks; is limited to work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting; and can have only occasional interaction with the public and with coworkers.

(Tr. 40.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Ivy-Covington "has no past relevant work[.]" (Tr. 43.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, "[c]onsidering [Ivy-Covington's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Ivy-Covington] can perform[.]" (Tr. 43.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Ivy-Covington's age, education, work experience, and RFC could perform the occupations such as laundry worker, office clerk, and small product assembler. (Tr. 44.) After finding that Ivy-Covington could perform work in the national economy, the ALJ concluded she was not disabled. (Tr. 44.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

### 4. Analysis

Ivy-Covington argues that the ALJ erred (1) in "determining that [her] subjective statements were 'not entirely consistent' with the Record"; (2) in giving "little weight" to the opinion of her psychotherapist; and (3) "by not accounting for variable functioning or upper extremity deficits in his [RFC] assessment[.]" (ECF No. 12 at 7.)

#### 4.1. Credibility Determination

In making his RFC determination the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those

symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.…" SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Ivy-Covington argues that the ALJ erred by finding that her subjective statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with other information in the record. (ECF No. 12 at 8-15.) Although Ivy-Covington acknowledges that the ALJ gave seven reasons for his finding, she argues that "[n]one of these reasons are 'good reasons' for discrediting [her] subjective statements and many of them misconstrue the Record." (*Id.* at 9.) She then attempts to rebut each of the ALJ's reasons.

In response, the Commissioner argues that "[t]he ALJ accurately summarized [Ivy-Covington]'s testimony and her subjective complaints, noting a number of inconsistencies between her statements and the medical record." (ECF No. 18 at 18.) The ALJ found that "[s]ignificant limitations are warranted by [Ivy-Covington]'s longstanding physical and mental health issues" and that "the medical evidence reflects some persistent psychological concerns despite longstanding psychotherapy and psychiatric medication management[.]" (Tr. 41 (internal citations omitted).) Nonetheless, the ALJ found that Ivy-Covington's statements concerning the intensity, persistence, and

6

limiting effects of her conditions to be inconsistent with other evidence in the record, explaining:

> [T]he evidence suggests a lesser degree of limitation than [Ivy-Covington] alleges. Conservative and routine courses of treatment for her conditions are suggestive of a substantial retained functional level. Neurological abnormalities on EMG were described as mild, leading to a reasonable inference that [Ivy-Covington] has no significant radiculopathic symptoms affecting upper and lower extremity functioning. The consultative physical examiner attributed [Ivy-Covington]'s symptoms and limitations largely to deconditioning and emotional factors, indicating the underlying physical conditions were assessed to be less serious on their own. Clinical abnormalities at that detailed exam, including tenderness to palpation and range of motion abnormalities of the knees and lumbar spine, were not suggestive of significant neurological or motor deficits. [Ivy-Covington]'s mental health records repeatedly refer to her noncompliance with prescribed treatments, suggesting both that [Ivy-Covington]'s conditions are not so severe that she is motivated to adhere to her regimen and that they may be treatable to a greater degree. Nevertheless, at most visits, her mental condition is noted to be either stable or improving. Specific reference is made to improvement in [Ivy-Covington]'s reported psychosis and her overall level of symptoms. All of these considerations are somewhat in conflict with the allegation that [Ivy-Covington] is unable to maintain competitive employment at any functional level.

(Tr. 41-42 (internal citations omitted).)

The fact that deconditioning and emotional factors may exacerbate Ivy-Covington's symptoms does not mean her symptoms or impairments are not severe on their own. Regarding Ivy-Covington's alleged noncompliance with her medical regimen, it is true that a treatment note from July 2016 from Samantha Dagenhardt, APNP, suggests "poor compliance." (Tr. 701.) However, it is not clear what this note is referencing, as it may be suggesting that Ivy-Covington was not compliant with

Dagenhardt during the exam itself. Or, as Ivy-Covington argues (ECF No. 12 at 11), it could be referencing Dagenhardt's other notation that Ivy-Covington is not taking one of her prescriptions with food. (Tr. 701.) Additionally, the ALJ overlooks other portions of the record which state Ivy-Covington *is* taking her medication. (*See, e.g.*, Tr. 703 ("Patient reports taking medications as prescribed.").) The Commissioner argues that, "even if [Ivy-Covington] was more compliant than not, any error the ALJ made in citing [Ivy-Covington]'s noncompliance amounts [sic] is harmless in light of the fact that the ALJ provided numerous other reasons (discussed above) for discounting [Ivy-Covington]'s subjective statements." (ECF No. 18 at 22.) But "[c]ourts have repeatedly stressed that an ALJ 'must not draw any inferences about a claimant's condition from this failure [to pursue treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Eula M. v. Berryhill*, No. 17 C 6669, 2019 WL 2173790, at *10 (N.D. Ill. May 20, 2019) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); *see* SSR 16-3p, 2017 WL 5180304, at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").

With regard to the ALJ's observation that "at most visits, [Ivy-Covington's] mental condition is noted to be either stable or improving" (Tr. 42), a stable or improving condition is not indicative of an ability to work full-time. "A person's symptoms might improve from severe to moderate and yet still be disabling. Improvement alone does not suggest the absence of a disability." *Herron v. Colvin*, No. 14-CV-56, 2014 U.S. Dist. LEXIS 161947, at *18 (E.D. Wis. Nov. 19, 2014). Pain and other symptoms do not need to get progressively worse or even vary for them to be disabling.

Accordingly, the ALJ's opinion that Ivy-Covington's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the record is not supported by substantial evidence. On remand, the ALJ shall determine whether Ivy-Covington's statements "can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. 20 C.F.R. § 416.929(a). As part of that determination, the ALJ shall reconsider Ivy-Covington's noncompliance with treatment in light of her entire medical record.

**4.2. Psychotherapist Opinion**

Gary Romuald, Licensed Social Worker (LCSW), was Ivy-Covington's psychotherapist. The record contains Romuald's progress notes regarding Ivy-Covington and two other forms that he filled out about her. In December 2015 he filled out a "Mental Impairment Questionnaire (RFC & Listings)." (Tr. 452-57.) Romuald indicated a long treatment relationship, stating that he has been seeing Ivy-Covington approximately

9

weekly on and off since 2011. (Tr. 452.) He opined that Ivy-Covington would be absent from work more than four times per month, it is expected that her impairments will last longer than twelve months, she is a malingerer, and her "impairments [are] reasonably consistent with the symptoms and functional limitations described in this evaluation." (Tr. 457.) In August 2017, Romuald filled out a "Mental Health Report" for Ivy-Covington. (Tr. 769-73.) He noted marked limitations in her "[r]estriction of activities of daily living" and with "[d]ifficulties in maintaining social functioning." (Tr. 771.) He also opined that she would have frequent "[d]eficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." (*Id.*) And he noted that her "psychiatric condition exacerbate[s] [her] experience of pain or any other physical symptoms[.]" (Tr. 770.)

> The ALJ gave little weight to Romuald's opinions:
>
> This source's apparent observation of malingering is inconsistent with the assessment of listing-level mental impairments. The degree of limitation expressed in this statement is also at odds with [Ivy Covington]'s conservative and routine mental health treatment, notes that her condition is generally stable or improving, and the non-medical determinability of the specific conditions diagnosed and treated. For these reasons, little weight is given to this treating source statement.

(Tr. 43 (internal citation omitted).)

Ivy-Covington argues that the ALJ did not provide "good reasons" for giving Romuald's opinions "little weight." (ECF No. 12 at 15-19.) She argues that Romuald's conclusion that she was malingering was inconsistent with the rest of his opinions and

should not be considered. (*Id.* at 17.) She further argues that the ALJ misconstrues the record because her "mental impairments and resulting functioning are more adequately described as 'variable[.]'" (*Id.*)

The Commissioner argues that Romuald is not an acceptable medical source and that the ALJ gave "adequate reasons" for his determination that Romuald's opinions were entitled to little weight. (ECF No. 18 at 5-12.) The Commissioner also argues these reasons were "consistent with the regulatory factors." (*Id.* at 8.)

As a psychotherapist and licensed social worker, Romuald is not an "acceptable medical source." SSR 06-3p. Having said that, although Romuald's opinion is not entitled to controlling weight, the ALJ is still required to consider the 20 C.F.R. § 416.927(c) factors in determining how much weight to give his opinions. SSR 06-3p. In fact,

> it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).

Romuald's progress notes (Tr. 343-45, 347-61, 363-79, 381, 383-92, 485-92, 494, 672-86, 688-94, 696-700, 702-10, 712-13) mostly indicate that Ivy-Covington was either stable and "maintaining current status" or that she was improving. Only a few notes indicate that she was "deteriorating." (*See, e.g.*, Tr. 376.) Nevertheless, as noted above, being stable or improving does not necessarily mean that Ivy-Covington does not suffer from any

11

impairments or does not experience pain. In other words, the observation that Romuald's progress notes state that Ivy-Covington is either stable or improving, without more, does not render them inconsistent with Romuald's assessment of the impairments set forth in the forms he completed.

While the court agrees with the ALJ's conclusion that Romuald's "apparent observation of malingering is inconsistent with the assessment of listing-level mental impairments," (Tr. 43 (internal citation omitted)), the court also agrees with Ivy-Covington that "it is the opinion of <u>malingering</u> that is inconsistent with the rest of the Record and should be disregarded…" (ECF No. 12 at 17 (emphasis in original)). Ivy-Covington's suspicion that Romuald did not actually intend to indicate that she was a malingerer may be correct. (*See id.* at 13-14.) And the ALJ's other stated reasons for only giving Romuald's opinion "little weight" are not supported by substantial evidence. Accordingly, on remand the ALJ shall reevaluate Romuald's opinion in light of the relevant evidence in the record. If the ALJ decides that Romuald's opinions are not entitled to more weight, he shall give "good reasons" supported by the record for discounting them.

**4.3. RFC Assessment**

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Ivy-Covington argues that the

ALJ erred by not including in his RFC assessment her variable functioning or upper extremity deficits. (ECF No. 12 at 19-22.)

### 4.3.1. Variable Functioning

Ivy-Covington argues, "[w]ith respect to variable functioning, Ivy-Covington—particularly with respect to her mental health diagnoses—exhibits variable functioning, marked with symptom exacerbation (see summary of evidence, supra)." (ECF No. 12 at 20.) Ivy-Covington does not specify what evidence demonstrates this variable functioning. However, her brief contained a bulleted list describing her symptoms on various dates:

> Ivy-Covington's mental impairments and resulting functioning are more adequately described as "variable:"
> - June 2015: reports compliance; feeling overwhelmed, poor focus, mood varies, depressed, depressed affect, anxiety, poor sleep and poor appetite[;]
> - July 2015: MSE [mental status exam]: anxious, depressed mood, hypervigilant, racing thoughts[;]
> - December 2015: reports feeling somewhat low/depressed; MSE: depressed mood, anxious, hypervigilant[;]
> - January 2016: increased anxiety[;]
> - May 2016: emotional distress, decreased moods related to early childhood physical and sexual abuse from ages 10-15; MSE: experiencing stress, anxious, hypervigilant, hallucinating, depressed mood[;]
> - July 2016: increased anxiety[;]
> - July 2016: somewhat disheveled and reports depressed moods, lately frustrated, isolates and is increasingly negative with thoughts of helplessness[;] <u>is deteriorating</u>;
> - August 2016: continues to experience flashbacks to early childhood abuse despite medications and therapy[;]
> - August 2016: increased anxiety and worry; MSE: depressed mood, anxious, hypervigilant[;]

- August 2016: distressed over incident at daughter'[sic] school; distressed, angry, frustrated, having difficulty making responsible decisions and maintaining emotional control; <u>deteriorating</u>[;]
- September 2016: feeling low, sad, and frustrated[;]
- September 2016: feels irritable/angry, MSE: anxious, experiencing stress[;]
- September 2016: sleep varies with anxiety, mood: anxious[;]
- October 2016: MSE: anxious, depressed mood, sad/empty, hypervigilant, hallucinating, experiencing stress, worried[;]
- November 2016: reports low and stressful moods, MSE: depressed mood, anxious, racing thoughts[;]
- December 2016: reports feeling somewhat sad/irritable past few days; MSE: hypervigilant/labile, depressed mood[;]
- March 2017: increased stress, still uncertain and worried her own emotional instability may eventually cause everything to unravel; depressed mood, worried, anxious[;]
- May 2017: reports feeling unstable most days; MSE: anxious[;]
- June 2017: MSE: blunted affect; psychotic symptoms: voices[.]

(*Id.* at 17-18 (internal citations omitted; emphasis in original).) But it's not clear how this evidence establishes that Ivy-Covington's functioning varies in some way from one time period (minute, hour, day) to the next.

As the Commissioner argues, "Plaintiff does not identify any evidence of significant functional variations in the record or evidence that she experienced such 'good days and bad days' with marked differences in her functional abilities." (ECF No. 18 at 17.) And the ALJ considered her mental impairments in his RFC assessment. He explained,

> Similarly, the medical evidence reflects some persistent psychological concerns despite longstanding psychotherapy and psychiatric medication management. Documented reports of symptoms including some anxiety, hypervigilance, racing thoughts, hallucinations, and mood abnormalities are consistent with moderate difficulties in interacting with others and

14

concentrating, persisting, and maintaining pace .... Related limitations pertaining to the complexity of work tasks, the exposure to work-related stressors, and interaction with others are warranted.

(Tr. 41 (internal citations omitted).) The ALJ included limitations in the RFC by stating that Ivy-Covington "is limited to work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting; and can have only occasional interaction with the public and with coworkers." (Tr. 40.) Because the ALJ addressed her mental impairments and accounted for them in the RFC assessment, the court finds no error.

### 4.3.2. Upper Extremity Impairment

Finally, Ivy-Covington argues that "the ALJ does not account for any upper extremity deficits in his RFC assessment, resulting in an RFC that is insufficient to support his step five denial." (ECF No. 12 at 21.) She argues that the record contains the following evidence of upper extremity impairment:

- March 2015: a lot of neck pain into the right shoulder and upper extremities to the fingertips; intermittent tingling and numbness in the index and middle fingers[;]
- March 2015[:] cervical MRI reveals indentation of the cervical cord at C5-6[;]
- January 2016[:] arm pain; three weeks ago, was walking outside and fell down on ice; at that time, she thought her arm pain would get better but it has been getting worse; difficulty holding items, as pain shoots from forearm into elbow[;]
- February 2016: presents today following a motor vehicle accident; has, in part, left arm pain since the accident[;]
- August 2016: neck pain radiates to the left arm; achiness and numbness[;] also notes EMG/NCS confirms evidence of cervical radiculopathy[;]

15

- January 2017: neck pain radiates to the left arm[.]

(*Id.* (internal citations omitted).)

The ALJ stated,

Significant limitations are warranted by [Ivy-Covington]'s longstanding physical and mental health issues. In connection with her musculoskeletal complaints, the medical evidence refers to traumas sustained in motor vehicle accidents in 2005, 2009, and 2016[.] Radiologic evidence establishes degenerative conditions affecting [Ivy-Covington]'s lumbar and cervical spine and left knee[.] Upper extremity electromyogram (EMG) and nerve conduction studies were consistent with mild mid-cervical disc displacement[.] Treatment, including with physical therapy, therapeutic injections, and pain medications, has been for pain in the back, neck, and both knees, as noted in the testimony[.] These circumstances are consistent with limitation to a range of light work with additional postural restrictions as above.

(Tr. 41 (internal citations omitted).) The ALJ limited her to "light work" and included "postural restrictions," finding that "she can never climb ladders, ropes or scaffolds; can only occasionally climb ramps or stairs; [and] can frequently stoop, kneel, crouch, crawl, and engage in activities requiring balance[.]" (Tr. 40.)

While the Commissioner correctly argues that Ivy-Covington did not state what additional limitations the ALJ should have included in the RFC assessment to address her upper extremity limitations, the ALJ only included limitations that address her back, neck, and knee pains. Given the above-stated medical evidence that supports Ivy-Covington's upper extremity limitations, on remand the ALJ should include upper extremity limitations in the RFC assessment or provide a good reason for not doing so.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of March, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge